UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
CARRIE F.,                                                         :
                                                                   :    **RULING & ORDER ON**
                                         Plaintiff,                :    **PLAINTIFF'S MOTION**
                                                                   :    **TO REVERSE OR**
            -against-                                              :    **REMAND AND**
                                                                   :    **COMMISSIONER'S**
COMMISSIONER OF SOCIAL SECURITY                                    :    **MOTION TO AFFIRM**
                                                                   :    **DECISION OF**
                                         Defendant.                :    **COMMISSIONER**
                                                                   :
                                                                   :
------------------------------------------------------------------ :    3:25-CV-00487 (VDO)
                                                                   x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Carrie F.[1] commenced this action against the Commissioner of Social Security

(the "Commissioner"), challenging the decision of the Commissioner that Plaintiff does not

qualify for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The

parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure

12(c).[2]

After considering the submissions, for the reasons set forth below, the Court **denies**

Plaintiff's motion and **grants** the Commissioner's motion.

I.      **BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in both

Plaintiff's Memorandum in Support of her Motion for an Order Reversing the Decision of the

---

[1] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021, Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

[2] *See* Mot. to Reverse Decision of the Comm'r, ECF No. 14 at 1; Mot. to Affirm Decision of the Comm'r, ECF No. 20 at 1.

Commissioner and the Commissioner's Memorandum in Support of his Motion for an Order Affirming the Commissioner's Decision. The Court adopts and incorporates both statements of fact by reference.

On July 27, 2022, Plaintiff filed an application for DIB under Title II of the Social Security Act, alleging a disability beginning on March 27, 2020.[3] The claim was initially denied on August 10, 2023, and upon reconsideration on November 16, 2023.[4] Plaintiff then filed a written request for a hearing, and on April 9, 2024, the ALJ held a  video hearing.[5] On May 27, 2024, the ALJ issued an unfavorable decision and denied Plaintiff's claim.[6] Plaintiff then submitted a request for review of the hearing decision, which the Appeals Council denied on February 5, 2025.[7] Plaintiff thereafter filed the instant appeal on March 26, 2025.[8]

## II.    **LEGAL STANDARD**

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

---

[3] Certified Administrative Record ("R.") at 20. "R." refers to the Certified Administrative Record filed at ECF No. 9. The Court cites to the pagination on the bottom right-hand corner of the record, as opposed to the CM/ECF pagination.

[4] R. 20.

[5] R. 20.

[6] R. 31.

[7] R. 1.

[8] *See* Compl., ECF No. 1.

conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (cleaned up). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre*, 758 F.3d at 149 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.*

To be disabled and thus qualify for benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(I)–(v)[,]" as set forth below:

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social

3

Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicates disability. *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

### III.   **<u>DISCUSSION</u>**

In challenging the ALJ's final decision that Plaintiff was not entitled to DIB, Plaintiff raises the following arguments: (1) that substantial evidence does not support the ALJ's residual functioning capacity ("RFC") determination; (2) that the ALJ improperly interpreted raw medical evidence and should have, instead, ordered a post-hearing evaluation; and (3) additional evidence submitted to the Appeals Council warrants remand. For the following reasons, the Court disagrees with each of these arguments.

### A.   **The ALJ's Rejection of a State Consultant's Proposed Manipulative Limitation is Supported by Substantial Evidence**

Plaintiff asserts that the ALJ improperly found that the record does not support manipulative limitations. Specifically, Plaintiff claims that the ALJ improperly rejected the opinion of state agency consultant Joseph Connolly, M.D., who found that Plaintiff was limited to occasional fingering with the left hand due to numbness and weakness.[9] The Commissioner, in response, argues that the ALJ reasonably declined to adopt Dr. Connolly's assessment of left-hand weakness when there was substantial contradictory evidence in the record.[10] The Court agrees with the Commissioner.

---

[9] Mem. in Supp. of Mot. to Reverse Decision of the Comm'r, ECF No. 14-1 at 16–19.

[10] Mem. Mot. to Affirm Decision of the Comm'r, ECF No. 20-1 at 8–9.

The RFC "is what the claimant can still do despite the limitations imposed by h[er] impairment." *Greek v. Colvin*, 802 F.3d 370, 374 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§ 416.945(a)(1), (3). The RFC, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Further,"'[t]here is no requirement that the [ALJ] accept the opinion of a consultative examiner concerning a claimant's limitations,' especially when substantial evidence supports the ALJ's decision not to adopt the consultative examiner's opinion." *Miranda v. Comm'r of Soc. Sec.*, No. 22-CV-4226, 2023 WL 6385727, at *10 (E.D.N.Y. Sept. 29, 2023) (quoting *Pellam v. Astrue*, 508 F. App'x 87, 89–90 (2d Cir. 2013). Certainly, "the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) (cleaned up). But "[i]t is well established that an ALJ may set aside an opinion that is contradicted by the weight of other record evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 95 (2d Cir. 2022). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56.

Here, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b). [11]  However, he placed explicit limitations on this capacity, namely, that she can only "occasionally reach overhead with her bilateral extremities," and that she can only "frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds;

---

[11] R. 26.

frequently balance, stoop, kneel, and crouch; and can occasionally crawl."[12] He also stated that she cannot work at "unprotected heights" or "operate machinery" with exposed, moving mechanical parts, and "[s]he must avoid concentrated exposure to dust, odors, fumes, gasses[,] and pulmonary irritants."[13]

However, the ALJ did not place any manipulative limitations on Plaintiff's use of her left hand,[14] contrary to Dr. Connolly's recommendation. Specifically, Dr. Connolly came to the conclusion that Plaintiff should have a limitation of only occasionally fingering with her left hand because of "numbness and weakness," although she has "fine manipulation" in that hand.[15] The ALJ rejected this determination as "not consistent with [Plaintiff's] examinations."[16] In doing so, the ALJ cited several pieces of evidence contradicting Dr. Connolly's assessment of Plaintiff's left hand weakness.[17] By way of medical evidence, he cites medical notes from one of Plaintiff's treating physicians—Thomas Kesman, M.D.— which stated that Plaintiff has full strength in her "deltoids, wrist extensors, triceps, finger flexors, and interossei bilaterally" and only "[m]ild weakness in finger abduction on the left."[18]

---

[12] *Id.*

[13] *Id.*

[14] *See id*.

[15] R. 88; *see also* R. 29.

[16] R. 29.

[17] ECF No. 14-1 at 18–19. Plaintiff correctly asserts that the ALJ cited several irrelevant parts of the transcript to support his rejection of Dr. Connolly's left fingering limitation. *Id.* at 19 n.11. However, these erroneous citations were alongside accurate citations to the record where treating physicians, and Plaintiff herself, denied weakness and altered dexterity in her Plaintiff's hand. *See* R. 29. Thus, despite the minor citation errors, substantial evidence exists in the record to support the ALJ's finding.

[18] R. 1597.

He also cites to nurse practitioner Elisha Lico's observations in February 2024 of full strength in all arm muscles bilaterally with intact sensation throughout.[19] And he cited to similar observations from NP Lico in March 2024, where she found that Plaintiff has a "full range of motion."[20] Indeed, at that appointment, Plaintiff denied that she had any "altered dexterity" or "focal weakness."[21]  Finally, the ALJ also noted that Plaintiff's hyperesthesia and numbness following a February 2024 car accident "completely resolved" before she was discharged from the emergency department.[22]

While an ALJ cannot arbitrarily substitute their judgment for that of a medical professional, they may "set aside an opinion that is contradicted by the weight of other record evidence." *Rucker*, 48 F.4th at 95. Here, the Commissioner supported his decision to set aside Dr. Connolly's left-hand fingering limitation after documenting significant contradictory evidence in the record. Dr. Connolly identified this limitation based on "numbness and weakness" in Plaintiff's left hand. However, record evidence indicates that this numbness and weakness had resolved by the date of the Commissioner's decision. Specifically, NP Lico found that Plaintiff exhibited full strength in her left hand. Plaintiff herself reported that her numbness had completely resolved, and that she did not experience any altered dexterity or focal weakness. A reviewing court may only reject an ALJ's decision if "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Here, there is no indication that a reasonable

---

[19] R. 27; *see also* R. 1637.

[20] R. 28; *see also* R. 1632–33.

[21] *Id.*

[22] R. 1640.

factfinder must—or even should—conclude otherwise. Accordingly, the Court finds no error in the ALJ's decision to set aside Dr. Connolly's left-hand fingering limitation. Thus, substantial evidence supports the ALJ's finding that the record did not support manipulative limitations.

### B. The 2024 MRI Did Not Require the ALJ to Assess Greater Substantive Limitations or Further Develop the Record

Plaintiff received an MRI on March 3, 2024 (the "March 2024 MRI"), following a car accident that occurred earlier that year. A few days later, on March 6, 2024, Plaintiff attended a follow-up appointment with NP Lico, who assessed Plaintiff's condition and recovery from the car accident in light of the March 2024 MRI.[23] At the appointment, NP Lico observed that the March 2024 MRI shows faster than expected degeneration around the site of Plaintiff's 2013 cervical spine fusion surgery.[24] However, she also noted that Plaintiff denied any cervical collar pain at rest or upon palpitation, and that Plaintiff had "a full range of motion" and presented "without any discomfort."[25] NP Lico then cleared Plaintiff to remove the cervical collar she had worn since the accident and instructed her to only "follow up as needed."[26]

The ALJ reviewed this record evidence in rendering his decision. He cites NP Lico's notes and observations on the March 2024 MRI for the proposition that the "March 2024 MRI of the cervical spine showed disc herniation at C6-7 and no ligamentous injury."[27] The ALJ then extensively reviewed and cited NP Lico's notes from her follow-up appointment with

---

[23] R. 1632–33.

[24] *Id.* at 1633.

[25] *Id.*

[26] *Id.*

[27] R. 28 (citing R. 1633).

Plaintiff, where she examined Plaintiff's condition in light of the March 2024 MRI.[28] Specifically, the ALJ noted that at Plaintiff's appointment with NP Lico, Plaintiff reported "left upper extremity pain" but denied "focal weakness, altered gate, or altered dexterity." And he stated that, during the physical exam, Plaintiff had a "full range of motion, full strength in the upper extremities, intact sensation, and normal reflexes."[29]

Plaintiff makes two arguments concerning the March 2024 MRI: first, that the ALJ improperly interpreted this evidence as "raw medical data" without the benefit of a medical provider's opinion; and second, the March 2024 MRI imbued the ALJ with a duty to further develop the record by ordering a post-hearing medical examination. The Court addresses each of these arguments in turn.

### 1.      Raw Medical Data

Plaintiff first alleges that the ALJ committed error by interpreting "raw medical data" from a March 2024 MRI without seeking a medical opinion on its significance.[30] Thus, according to Plaintiff, the ALJ improperly crafted an RFC that did not account for the rapid progression of Plaintiff's cervical spine degeneration.[31] The Commissioner, in response, explains that the ALJ was not required to seek an updated medical opinion because NP Lico reviewed the MRI, conducted a normal physical exam shortly after, and did not recommend further treatment.[32] The Court agrees with the Commissioner.

---

[28] *Id.*

[29] *Id.*

[30] ECF No. 14-1 at 19–20.

[31] *Id.* at 20.

[32] ECF No. 20-1 at 11–12.

An ALJ may not "substitute their lay judgment for a 'competent medical opinion.'" *Ramsey v. Comm'r of Soc. Sec.*, 830 Fed. App'x 37, 39 (2d Cir. 2020) (quoting *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999)). Thus, it is outside the role of the ALJ to "interpret raw medical data in functional terms" without the benefit of a medical opinion. *Quinto v. Berryhill*, No. 17-CV-24 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (cleaned up). However, an ALJ does not inappropriately forge his "own medical opinion[] based on raw data" when he considers such data contemporaneously with medical opinions in the record interpreting it. *Ramsey*, 830 Fed. Appx. at 39; *see also Edward M.C. v. Comm'r of Soc. Sec.*, No. 20-CV-644, 2021 WL 3032692, at *5 (N.D.N.Y. July 19, 2021) (finding that an ALJ did not impermissibly rely on raw medical data when he relied on his "own assessment of the record" and the opinion of a consultive examiner); *Shawn T. v. Comm'r of Soc. Sec.*, No. 21-CV-26, 2023 WL 4517864, at *6 (W.D.N.Y. July 13, 2023) (finding that an ALJ did not "impermissibly rely on his own lay interpretation of raw medical data," even though the RFC did not mirror a specific medical opinion, because the ALJ considered the "evidence of record, including opinion evidence, treatment history, and Plaintiff's activities").

Here, there is no indication that the ALJ impermissibly relied on his own lay interpretation of the March 2024 MRI. Rather, the ALJ properly considered evidence in the record, including NP Lico's assessment of Plaintiff's condition in light of the March 2024 MRI and Plaintiff's objective treatment history. Plaintiff's core concern is that the ALJ discounted the rapid degeneration around the site of Plaintiff's 2013 cervical spine surgery because the ALJ reviewed the March 2024 MRI without the benefit of a medical opinion elaborating on

the functional effect of this degeneration.[33] However, NP Lico specifically referenced the degeneration in her observations of the March 2024 MRI, and the ALJ specifically cited to these findings.[34] While the March 2024 MRI did show degeneration, as noted by NP Lico, the contemporaneous physical exam was normal and showed full strength in Plaintiff's extremities.[35] Accordingly, The ALJ did not need to interpret the March 2024 MRI as raw medical data because he had the benefit of NP Lico's medical opinion.

Additionally, the ALJ did not rely on the March 2024 MRI to assess a functional limitation or lack thereof. At most, he considered the MRI alongside NP Lico's review of the record of the MRI and her contemporaneous physical examination of Plaintiff. An ALJ is prohibited from assessing raw medical data in functional terms. *See Quinto*, 2017 WL 6017931, at *12. But there is no indication that he used the March 2024 MRI to assess Plaintiff's function-by-function limitations. The ALJ's only statement referencing the March 2024 MRI, namely, that it "showed disc herniation at C6-7 and no ligamentous injury," is not a functional assessment. At most, it demonstrates that the ALJ reviewed it as part of the broader record alongside medical opinion evidence interpreting the MRI. Accordingly, the Court finds that the ALJ did not substitute his lay judgment for a competent medical opinion or forge his own judgment based on raw data. Rather, he relied on NP Lico's interpretation to craft an RFC that is supported by substantial evidence in the record, and at most, the ALJ referenced the

---

[33] ECF No. 14-1 at 21–22.

[34] R. 28.

[35] R. 1633; *see also* R. 28.

March 2024 MRI as part of a review of the broader record.  Thus, the Court finds no error in the ALJ's analysis.

### 2.    Post-Hearing Evaluation

Plaintiff next argues that the ALJ failed to satisfy his duty to develop the record because he did not request a post-hearing medical evaluation of Plaintiff in light of the March 2024 MRI.[36] The Commissioner, in response, argues that the ALJ was not required to develop the record further because an ALJ's decision whether to seek the opinion of a medical expert is discretionary.[37] The Court agrees with the Commissioner.

"[A]n ALJ is not required to obtain a medical opinion when, as here, such opinion is not part of 'the records of [the claimant's] medical source(s)." *Ramos v. Comm'r of Soc. Sec.*, No. 24-2420, 2025 WL 1720393, at *1 (2d Cir. June 20, 2025) (summary order). Importantly, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d 7 at 79 n.5 (cleaned up). Indeed, while an ALJ "may ask for medical evidence from expert medical sources," 20 C.F.R. § 404.1513a(b)(2), the decision of whether to do so is "within the discretion of the ALJ." *Joel F. v. Comm'r of Soc. Sec.*, No. 20-CV-904, 2021 WL 6503576, at *9 (N.D.N.Y. Nov. 9, 2021), *R&R adopted sub nom, Frost v. Comm'r of Soc. Sec.,* No. 20-CV-0904, 2022 WL 160304 (N.D.N.Y. Jan. 18, 2022).

---

[36] ECF No. 14-1 at 22–25.

[37] ECF No. 21-1 at 11–12.

There are no "obvious gaps in the record" that would require an assessment from yet another medical practitioner. The ALJ had already sought and reviewed two assessments of Plaintiff's physical functions from state agency consultants Dr. Honeychurch and Dr. Connolly. While those assessments predate the March 2024 MRI, the ALJ had the benefit of up-to-date observations from NP Lico. As NP Lico highlighted, the March 2024 MRI showed degeneration in Plaintiff's cervical spine. Nevertheless, NP Lico's contemporaneous physical examinations were normal, and she did not recommend any specific follow-up treatment. The ALJ had the benefit of opinions from these three practitioners, and the decision whether to request a post-hearing evaluation was discretionary. The ALJ properly exercised his discretion in deciding not to seek another medical opinion. Accordingly, the Court finds that the ALJ sufficiently developed the record and was not required to order a post-hearing evaluation in light of the March 2024 MRI.

## C.    The Additional Evidence Submitted to the Appeals Council Does Not Warrant Remand

On June 4, 2024, a little over a week after the ALJ issued his decision, Plaintiff attended an appointment with Dr. Janet Pearl. At that appointment, Plaintiff showed decreased strength in her lower extremities, decreased sensation in the lower left arm and hands, reduced strength in the upper extremities, reduced grip strength on the left, and severe pain and generalized tenderness.[38] Plaintiff then submitted Dr. Pearl's resulting report to the Appeals Council.[39] The Appeals Council found that this evidence "[did] not show a reasonable probability that it would

---

[38] R. 12–16.

[39] *Id*; *see also* R. 2.

13

change the outcome of the [ALJ's] decision."[40] Nevertheless, Plaintiff contends that this additional evidence acts as a basis for remand of this matter to the ALJ to consider new limitations.[41] In response, the Commissioner argues that the June 2024 examination postdates the May 2024 decision and is inconsistent with other physical examinations in the record.[42] After careful review of the record, the Court agrees with the Commissioner and the Appeals Council.

Under 20 C.F.R. 404.970(a)(5), the Appeals Council will review a case on the basis of new evidence if such evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. 404.970(a)(5). "New evidence is any evidence that has not been considered previously during the administrative process" and is not "!  cumulative to that already contained in the record prior to the ALJ decision." *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010). "Evidence is material if it is (i) relevant to the time period for which benefits have been denied and (ii) probative, meaning it provides a reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Id*. Additionally, evidence submitted to the Appeals Council does not inherently warrant remand when it is contradicted by other evidence in the record. *See Gauda v. Commr. of Soc. Sec.*, No. 23-594, 2024 WL 886595, at *3 (2d Cir. Mar. 1, 2024) (summary order). "When the Appeals Council denies review after considering

---

[40] R. 2.

[41] ECF No. 14-1 at 27.

[42] ECF No. 20-1 at 13.

new evidence, [a court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *accord Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).

The findings in Dr. Pearl's June 2024 examination are inconsistent with the record, and as such, the Appeals Council was warranted in denying review after considering this evidence. As the ALJ found, from June 2020 through May 2022, Plaintiff had "normal physical exams with normal gait, normal range of motion of the neck, and normal motor and sensation."[43] In February 2023, Plaintiff had mild weakness in finger abduction on the left but otherwise maintained full strength.[44] Her February and March 2024 examinations demonstrated that Plaintiff retained full strength, intact sensation, and full range of motion.[45] Indeed, during those examinations, she even stated that her numbness had completely resolved, and that she did not experience any altered dexterity or focal weakness. Then, in June 2024, a little over a week after the ALJ issued an unfavorable decision, Dr. Pearl issued a report that directly contradicted years of evidence in the record to find that Plaintiff had demonstrable weakness that was not present during her earlier examinations.[46] However, it does not relate to the period on or before the date of the hearing decision, and it substantially contradicts other evidence in the record. Thus, there is no indication that it would influence the ALJ to decide Plaintiff's application

---

[43] R. 27.

[44] *Id.*

[45] R. 27–28.

[46] R. 13.

15

differently. Accordingly, the Court finds that there is substantial evidence to support the decision of the ALJ, notwithstanding Dr. Pearl's June 2024 report.

## IV.   **CONCLUSION**

For these reasons, the Court **grants** the Commissioner's motion to affirm (ECF No. 20) and **denies** Plaintiff's motion to reverse or remand (ECF No. 14). The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
March 27, 2026.

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge